**THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

AMERICAN ASSOCIATION OF NURSE
PRACTITIONERS, *et al.*,

　　　　　　　　*Plaintiffs*,

　　　v.

LINDA MCMAHON, *in her official
capacity as Secretary of the United States
Department of Education, et al.*,

　　　　　　　　*Defendants*.

No. 1:26-cv-1780 (BAH)

PA EDUCATION ASSOCIATION, *et al.*,

　　　　　　　　*Plaintiffs*,

　　　v.

UNITED STATES DEPARTMENT OF
EDUCATION*, et al.*,

　　　　　　　　*Defendants*.

No. 1:26-cv-1941 (BAH)

**DEFENDANTS' SUPPLEMENTAL BRIEF**

On June 23, 2026, the Court held oral argument in this consolidated case on AANP Plaintiffs' Motion for Stay Under 5 U.S.C. § 705 and for Preliminary Injunction, ECF No. 4, and PA Plaintiffs' Motion for Preliminary Injunction, *see* No. 1:26-cv-1941, ECF No. 7, and requested supplemental information from Defendants. *See* Minute Order, June 23, 2026. The Court's requests are stated verbatim, followed by Defendants' responses:

1. **"[T]hat defendants explain, with respect to the Final Rule's definition of 'professional degree,' in part (i)(D), whether (a) the requirement for 'a four-digit program CIP code' covers each degrees listed in part (ii)(A) of the same definition; (b) any degrees not listed in (ii)(A) of the Final Rule that also satisfy the CIP code requirement in (i)(D); and (c) the CIP codes are used in any other way to determine the availability or amount of federal funding[.]"**

Defendants confirm that every degree listed in part (ii)(A) of the Rule's definition of "professional student" is covered by "a four-digit CIP code" referenced in part (i)(D) of the definition.

Regarding subsection (b) of the Court's request, there are multiple types of programs that fall under each individual four-digit CIP code, but those programs can still result in the professional degrees listed in part (ii)(A) of the Rule's definition of "professional student." For example, a program in applied psychology under the six-digit code "42.2813" is one type of Clinical Psychology degree within the four-digit "42.28" series. To be clear, degrees earned from programs within those four-digit CIP codes referenced in part (i)(D) might not meet the other criteria of the Rule's definition of professional student. The four-digit CIP codes for the degrees listed in part (ii)(A) and the six-digit CIP codes within those series are provided as Exhibit 1 to this filing.

In response to subsection (c), the Department currently uses CIP codes to determine eligibility for Title IV funding under the Gainful Employment/Financial Value Transparency regulations. *See* 34 C.F.R. § 668.401, *et seq.* Those regulations require institutions to report their qualifying programs by CIP code. *See, e.g., id.* § 668.408. If programs do not meet the

1

requirements of those regulations, they can lose their eligibility for Title IV funding under certain conditions.  *See id.* § 668.408(b)(6).  The Department has also recently issued a rule which will take effect July 1 that requires institutions to report CIP codes to determine their eligibility for Workforce Pell grants.  *See* 91 Fed. Reg. 29254, 29306 (May 19, 2026).

2. **"[T]hat defendants provide their position as to whether Fed. R. Civ. P. 65(c) applies to stays under 5 U.S.C. § 705,** *see. e.g.*, *Cabrera v. U.S. Dep't of Lab.*, **792 F. Supp. 3d 91, 107 n.3 (D.D.C. 2025) (DLF);** *Neguse v. U.S. Immigr. & Customs Enf't*, **813 F. Supp. 3d 45, 100 (D.D.C. 2025) (JMC)[.]"**

If the Court issues preliminary relief of any kind, including a stay under 5 U.S.C. § 705 of the Administrative Procedure Act ("APA"), the Court should require Plaintiffs to post an appropriate bond.  Congress enacted the APA against a background rule that statutory remedies should be construed in accordance with "traditions of equity practice."  *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944).  Indeed, § 705 "was primarily intended to reflect existing law and not to fashion new rules of intervention for District Courts."  *Sampson v. Murray*, 415 U.S. 61, 69 n.15 (1974) (citation omitted).  The APA thus authorizes a court to grant injunctive relief subject to traditional equitable limitations.  And existing law at the time required courts to impose security whenever a preliminary injunction issued.  *See* Fed. R. Civ. P. 65 advisory committee's note of 1937 (explaining how section (c) did not create the bond requirement; it carried forward an existing requirement associated with preliminary injunctive relief).  Courts in fact had been issuing security for preliminary relief since the years immediately following the Judiciary Act of 1789, *see, e.g.*, *Love v. Fendall's Trustees*, 15 F. Cas. 993, 993 (C.C.D.C. 1801).  *Accord Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999) (limiting federal courts to equitable remedies "traditionally accorded by courts of equity").

Nothing in § 705 indicates that Congress intended APA plaintiffs to enjoy extraordinary provisional relief free from the customary requirement of security.  Courts "do not lightly assume

2

that Congress has intended to depart from established principles" of equity, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) (citation omitted), and courts ordinarily expect that Congress will make "an unequivocal statement" if it intends to make "a drastic departure from the traditions of equity practice," *Hecht*, 321 U.S. at 329.  There is no such statement in the APA that provisional relief should not be accompanied by security, particularly where the harm from a stay is equivalent to the harm from a preliminary injunction.

A contrary rule would permit litigants to obtain the functional equivalent of an injunction while evading the protections the Federal Rules afford parties injured by improvidently granted provisional relief.  A contrary rule would permit litigants to obtain the functional equivalent of an injunction while evading the protections the Federal Rules afford parties injured by improvidently granted provisional relief.  But the same equitable considerations that underlie Rule 65(c) apply with equal force to a § 705 stay.  *See* 5 U.S.C. 702.  A stay under § 705 and a preliminary injunction serve the same function in that both constitute extraordinary preliminary relief issued before final judgment to preserve the status quo based on a predictive assessment of the merits.  *See, e.g.*, *Nken v. Holder*, 556 U.S. 418, 432 (2009) ("The authority to grant stays has historically been justified by the perceived need 'to prevent irreparable injury to the parties or to the public' pending review." (quoting *Scripps-Howard Radio v. F.C.C.*, 316 U.S. 4, 9 (1942))).  And courts apply the same factors in deciding whether to grant either form of relief.  *Cabrera v. U.S. Dep't of Lab.*, 792 F. Supp. 3d 91, 99 (D.D.C. 2025) ("The factors governing issuance of a preliminary injunction also govern issuance of a § 705 stay." (quoting *District of Columbia v. USDA*, 444 F. Supp. 3d 1, 15 (D.D.C. 2020))); *see also* AANP Mot. at 21, ECF No. 4-1 ("In deciding whether to issue a § 705 stay, the Court considers the familiar four-factor test governing preliminary injunctions.").

Not only are the standards governing a § 705 stay and a preliminary injunction materially identical, but the risks posed by erroneously granted relief are likewise identical. In either case, the opposing party may suffer substantial losses if a court later determines that the movant was not entitled to interim relief. Rule 65(c)'s security requirement exists precisely to account for that risk by allocating the costs of erroneous provisional relief. Nothing in § 705 suggests that Congress intended to exempt APA plaintiffs from that traditional safeguard. Indeed, the authorization in § 705 that relief be "[o]n such conditions as may be required" confirms that Congress authorized courts to tailor appropriate terms to account for the risks inherent in interim relief before full adjudication on the merits. Otherwise, litigants could obtain the practical equivalent of a preliminary injunction—under the same standards with the same potential for harm—while evading the very protection Rule 65(c) was designed to provide.

If the Court grants a stay under 5 U.S.C. § 705, the Court should require Plaintiffs to provide security.

Dated: June 23, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHELLE BENNETT
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Christian Dibblee*
CHRISTIAN DIBBLEE (D.C. Bar No. 90002557)
KATHRYN L. ALKIRE (FL Bar No. 1050146)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 353-5980
Email: Christian.R.Dibblee@usdoj.gov

*Counsel for Defendants*

5